**STATE ex rel. ADAIR COUNTY COM'RS v. McCLOUD et al.**

No. 8093—Opinion Filed Dec. 12. 1916.

On Rehearing, July 10, 1917

(166 Pac. 1065.)

**1. Counties—County Treasurer—Liability.**

The bondsmen of a county treasurer, who, in good faith and without notice of any lack of responsibility in the bank, or defect in the bond, deposits his official funds in a duly designated county depository, which has given a bond legally approved and accepted, and which is, by its terms, in force during the period of such deposit, are not liable for loss of funds occasioned by the failure of the depository, and a subsequent adjudication that the surety on the bond was not liable thereon by reason of lack of authority of the person signing such surety's name to the bond, to bind such surety.

**2. Same.**

No such exemption from liability is given the county treasurer by statute, and he is liable for the full amount of such loss.

**3. Counties—County Treasurers—Liability.**

If a county treasurer deposits in a depository more than the amount of its bond, legally approved and on file, he and his bondsmen are liable for such excess amount lost by the failure of the bank.

(Syllabus by Burford, C.)

On Rehearing.

**4. Same.**

A county treasurer, who in good faith and without notice of any lack of responsibility in the bank, or defect in the bond, deposits his official funds in a duly designated county depository, which has given a bond, legally approved and accepted by the county commissioners, and which bond, by its terms, is in force during the period of such deposit, is not liable for loss of funds, within the amount of said bond, occasioned by the failure of the depository.

(Syllabus by the Court.)

Error from District Court, Adair County; John H. Pitchford, Judge.

Action by the State, on the relation of the County Commissioners of Adair County, against R. R. McCloud and another. There was a judgment for defendants, and plaintiff brings error. Affirmed on rehearing.

W. A. Woodruff and E. B. Arnold, for plaintiff in error.

W. L. Chase and J. W. Cosgrove, for defendants in error.

Opinion by BURFORD, C. Plaintiff sued upon the official bond of R. R. McCloud, former county treasurer of Adair county. The petition was in two counts. Judgment was for defendants upon the first count. Upon the second count judgment was for plaintiff. From the judgment upon the first count, plaintiff appeals.

As to this count the court made a general finding in favor of the defendants upon the issues joined, and also made special findings of fact. From the record and these findings it seems that the material facts involved are as follows:

The board of county commissioners of Adair county designated the Bank of Stilwell as a county depository. R. R. McCloud, the county treasurer of that county, deposited various amounts in the bank. Such bank at various times gave three different depository bonds. The bank failed. At the time of such failure there was on deposit in the bank the sum of $5,498.70. Of the various depository bonds it seems to be conceded that one had expired. Suit was instituted by the county upon the others—one a.

personal bond for $12,000, and the other a surety company bond for $5,000. The sureties upon the personal bond defended upon the ground that the bond signed by them was never accepted or approved by the county commissioners. The trial court sustained this defense, and rendered judgment against the bank and for the sureties. That judgment not being before us for review, we express no opinion as to its correctness; but as both parties in this suit apparently accept it as binding in this cause, we hold them to their theory of the case, and so regard it here. Upon the surety company bond the surety defended upon the ground that the party who signed its name to the bond was without authority so to do. Judgment was for the surety. The instant suit was then instituted. There was proof introduced for the purpose of showing that the treasurer had knowledge that there was no bond; but the effect of the court's finding is that he acted in good faith, both with regard to the bond and the condition and responsibility of the bank. There being evidence reasonably tending to support the finding, we are bound by it. Upon this state of facts the single question is presented of the liability of the treasurer and his bondsmen for the money lost in the bank failure; it having been shown that upon the judgment against the bank it was improbable, if not impossible, that anything would be realized.

In Van Trees v. Territory, 7 Okla. 353, 54 Pac. 495, the conflicting decisions in the American courts in regard to the liability of a county treasurer for loss of funds through bank failures were reviewed, and the rule was adopted that the treasurer was an insurer of the funds in his hands. It was there held that the failure of the bank, without any fault or negligence on behalf of the treasurer, would not relieve from liability upon his bond for failure to account for the funds thereby lost. After that decision the county depository law was passed, and following this, in County Commissioners v. Dunlop, 17 Okla. 53, 87 Pac. 590, upon a mandamus to compel the county treasurer to deposit the percentage of the public funds determined by the commissioners in the various depositories, the court said:

"When the depositories are designated, and their bonds approved, it becomes the duty of the county treasurer to use these banks as depositories for the county money in his hands; but it is left to his discretion to fix the amount to be placed in any given bank, subject, however, to the provisions that he shall not deposit an amount greater than the capital stock of such bank, nor greater than the bond given as security."

The limitation stated by the court as to capital stock is contained in the statute in express words; but the latter limitation as to the amount of the bond is not stated in so many words in the statute, and the construction given the statute in this regard by the court is apparently dictum. However, this dictum was followed and given the force of judicial decision by this court in Hinton et al. v. State ex rel. Neal, 57 Okla. 777, 156 Pac. 161, where it was held that for any deposit in excess of the amount of the depository bond, lost by failure of the depository bank, the treasurer and his bondsmen were liable. The pertinent provisions of the statute are found in section 1540, Rev. Laws 1910, which provides, in part, as follows:

"In all counties the county treasurer shall deposit daily all the funds and money of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer, in his name, as such county treasurer, in one or more responsible banks located in the county and designated by the board of county commissioners, as the county depositories: Provided, that there shall not be deposited of such funds in any one bank at any one time, a greater amount than the capital stock of said bank. * * * Before directing or authorizing the deposit of any such funds aforesaid the board of county commissioners shall take from each such bank a bond in a sum equal to the largest approximate amount that may be deposited in each respectively, at any one time. * * * The condition of said bond shall be that such deposit shall be promptly paid on the check or draft of the treasurer of such county, and the bondsmen of said treasurer shall not be liable for such deposit."

From the statute and the decisions above cited it seems that the following principles may be clearly deduced: (1) The county treasurer and his bondsmen are to be held as insurers of the public funds (Van Trees v. Territory, supra), except as to "moneys which have been destroyed by an overruling necessity, or taken from him by a public enemy, without any fault or neglect on his part" (U. S. v. Thomas, 15 Wall. 337, 21 L. Ed. 89), and except as that liability is modified by statute. (2) The exemption given by section 1540, Rev. Laws 1910, extends to bondsmen of the treasurer, but not to the treasurer himself. This from the fact that, the strict rule of accountability having been adopted in this state prior to the passage of the County Depository Act, and the Legislature having therein, in specific terms, exempted the bondsmen, we take it they did not intend to exempt the treasurer, and the rule "Expressio unius, exclusio alterius est," is to be here properly applied. (3) The treasurer and his bondsmen are

charged with knowledge as to what banks have been designated as depositories, and the amounts of the bonds given by each. (4) The treasurer and his bondsmen are liable for any amount in excess of the depository's bond, placed in such bank and lost by its failure, even in the absence of negligence upon the part of the treasurer. Hinton v. State ex rel., supra, (5) If, as this court has held, the treasurer and his bondsmen are liable for the loss of any excess deposit over the amount of the depository's bond, it must follow, as above stated, that the treasurer and his bondsmen are charged with knowledge of the amount of such bond, and it must further follow that, if no bond has been given, the treasurer and his bondsmen are charged with knowledge of that fact, and are liable for any deposit made in the designated bank and lost by reason of its failure and the lack of a bond, even in the absence of negligence upon the part of the treasurer.

Bearing these conclusions in mind, we come to the consideration of the facts of this case, and the final question submitted for our determination. We may take it from parties below and here, and the questions raised in the respective briefs, that the $10,000 surety bond had expired before the deposit here in question was made, that the $12,000 personal bond had never been lawfully approved and accepted, and therefore was never "taken" by the commissioners as a depository bond, but the $5,000 surety bond stands upon a different footing. The bond was apparently accepted and approved. The commissioners must have regarded it as binding and in force so far as these moneys here involved were concerned, for they sued upon it and recovered a judgment against the principal, but failed as to the surety upon the ground, above stated, that the party who signed the surety company's name thereto had no power or authority so to do. From the pleadings in that suit introduced in evidence in this cause, it appears that the sole defense made by the surety company was this lack of authority on behalf of the alleged agent. Are the bondsmen of the treasurer charged with knowledge of this latent defect in the bond, and therefore liable for the deposit lost by reason of such defect? · Suppose judgment had gone against the surety, and it had been found not to be financially responsible, as was the case here, as to the principal, would the bondsmen be liable for the lost deposit? No decision, either of this court or any other, has been cited by counsel or discovered by us, bearing upon this proposition. The statute says that the county commissioners shall take a bond, and that, the bond being taken, conditioned as provided in the statute, the bondsmen of the treasurer shall not be liable for the deposit. The county treasurer has nothing to do with taking or approving the bond. The fair conclusion is that, where a bond is taken and approved by the county commissioners, and the treasurer, acting in good faith and without negligence, deposits in the depository giving such bond an account not in excess thereof, his bondsmen are not liable for the loss of such deposit by reason of the failure of the bank, and a latent defect in the bond, such as the one in the case at bar. It seems even a harsh rule to hold the treasurer under such circumstances, especially in view of the fact that he is required to use the duly designated and bonded depositories; but such seems the logical effect of the decisions and legislative acts, and it must be taken that this is a burden which he voluntarily assumes with the office.

It follows that the defendant R. R. McCloud should be held liable upon the first cause of action for the full loss, the defendant surety company for the excess of the loss set out in such first cause of action over $5,000, the amount of the bond taken by the commissioners, and for no more of such loss, with proper interest upon each amount, and that the judgment of the trial court should be reversed in part, with directions to set aside the judgment heretofore given, and to enter one in accordance with the views herein expressed; the costs of this court to be equally divided.

### On Rehearing.

RAINEY, J. The opinion of the court in this case was written by Commissioner BURFORD, and was filed December 12, 1916. The syllabus reads:

"The bondsmen of a county treasurer, who, in good faith and without notice of any lack of responsibility in the bank, or defect in the bond, deposits his official funds in a duly designated county depository, which has given a bond legally approved and accepted, and which is, by its terms, in force during the period of such deposit, are not liable for loss of funds occasioned by the failure of the depository, and a subsequent adjudication that the surety on the bond was not liable thereon by reason of lack of authority of the person signing such surety's name to the bond, to bind such surety.

"No such exemption from liability is given the county treasurer by statute, and he is liable for the full amount of such loss.

"If a county treasurer deposits in a depository more than the amount of its bond, legally approved and on file, he and his bondsmen are liable for such excess amount lost by the failure of the bank."

Counsel for plaintiffs in error in due time filed petition for rehearing, in which it is contended that the findings of the trial court and of this court are clearly against the weight of the evidence. It would serve no useful purpose to review this evidence, but we have carefully examined the record, and are of the opinion that the facts as found by the trial court are amply supported by the evidence, and, as stated by the Commissioner, there being evidence reasonably tending to support the findings of the trial court, we are bound by such findings.

While we adhere to the opinion of the Commissioner in this respect, our investigation of the authorities and further consideration of the case convinces us that the opinion is incorrect to the extent that it holds that the treasurer is liable for loss of funds occasioned by the failure of a depository bank, where such bank was designated by the board of county commissioners as one of the county depositories, and had given a bond legally approved and accepted, which by its terms was in full force during the period covering such deposits, and such deposits were not in excess of the amount of the bond so taken and approved. On this question the learned Commissioner in the course of the opinion, says:

"The statute says that the county commissioners shall take a bond, and that, the bond being taken, conditioned as provided in the statute, the bondsmen of the treasurer shall not be liable for the deposit. The county treasurer has nothing to do with taking or approving the bond. The fair conclusion is that, where a bond is taken and approved by the county commissioners, and the treasurer, acting in good faith and without negligence, deposits in the depository giving such bond an account not in excess thereof, his bondsmen are not liable for the loss of such deposit by reason of the failure of the bank, and a latent defect in the bond, such as the one in the case at bar. It seems even a harsh rule to hold the treasurer liable under such circumstances, especially in view of the fact that he is required to use the duly designated and bonded depositories; but such seems the logical effect of the decisions and legislative acts, and it must be taken that this is a burden which he voluntarily assumes with the office."

The courts have adopted two general rules in construing official bonds; one rule being that the officer is in the relation of a bailee for hire and is only required to exercise good faith and reasonable skill and diligence in the care and protection of funds intrusted to him. The other rule announced is based upon the strict letter of the bond, and no exemptions are allowed, except those expressly stated in the bond. Under the latter rule it

has frequently been held that, where money is lost, destroyed, or stolen without any fault or negligence upon the part of the officer, said officer and his sureties are not released from liability on the official bond given by the officer. This rule was announced in the early case of H. E. Van Trees et al. v. Territory of Oklahoma, 7 Okla. 353, 54 Pac. 495, wherein it was held that the failure of a bank in which funds of the county treasurer were lost without negligence or fault on the part of the treasurer did not relieve the treasurer and his sureties upon the treasurer's official bond for failure to account for the funds deposited in said bank and lost by virtue of its failure. That case was decided long before the county depository law was passed, and the failed bank in that case was selected as a depository by the treasurer himself, and no bond was executed by the bank to the county for the protection of said deposits.

From our investigation of the reported cases we are unable to find a single one holding a treasurer liable on his official bond in cases similar to the one at bar, where, under acts providing for county depositories requiring the treasurer to deposit funds coming into his hands in designated banks, upon said banks executing and the county board taking and approving said bonds as required by law, but we have found several well-considered cases holding that the treasurer is not liable under such circumstances.

Stephens v. City of Ludlow et al. is a Kentucky case, reported in 159 Ky. 729, 169 S. W. 473, wherein one Stephens, as treasurer of the city of Ludlow, instituted a suit praying for an injunction against the members of the city council of said city to restrain them from interfering with him in the disposition of the funds in his hands as treasurer of said city, and also to restrain them from putting into effect an ordinance requiring him and all other city officers having control of the custody of the money belonging to the city of Ludlow to deposit said money in the bank designated under the terms of the ordinance. It was contended by Stephens that, since he was liable in any event on his bond for all funds coming into his hands, the city was not authorized to pass the ordinance, and that it could not require him to deposit funds coming into his hands as treasurer in the bank designated by the city, but that he had a right to select the depository in which the funds were to be kept. The law of Kentucky pertaining to the duties of the treasurers of such cities provided that it should be the duty of the treasurer "to receive and safely keep all money belonging to the city," and "perform such

other duties as may be required of him by ordinance not inconsistent with this act." In disposing of the treasurer's contentions the Court of Appeals of Kentucky, in an opinion by Carroll, Judge, said:

"This general direction that the treasurer shall safely keep all moneys belonging to the city and faithfully account for the same is not taken away by the ordinance giving the council the right to select a depository. The ordinance does not undertake to interfere with the right of the treasurer to safely keep and account for the funds that come into his hands. It merely directs him in what depository the funds shall be kept. No one of the other duties imposed upon the treasurer by the statute is touched by this ordinance. The power and duty of the treasurer, under the ordinance, is the same as it was before its enactment, except that the city funds must be placed and kept in the depository selected by the city. It is argued that, as the treasurer is bound at all hazards for the safekeeping of the funds, he, and not the city, should have the right to select the depository in which they should be kept. There would, of course, be great force in this argument, if the treasurer were an insurer of the solvency of the depository selected by the city; but he is not. If the treasurer himself selected a depository, and the funds of the city were lost by any wrongdoing on the part of any of its officers, or from other causes, the treasurer would be liable to the city for the funds, although he might have exercised the highest degree of care in selecting the depository. When, however, the selection of the depository is taken out of his hands, and he is directed by the city to keep its funds in an institution selected by it, the city, and not the treasurer, assumes responsibility for the integrity and solvency of the institution so urer, which, under the Constitution, the Leg-435, 17 S. W. 737."

It will be noted from the above language that the court recognized the rule that the treasurer would have been liable for the loss of funds in the event he had selected the depository, even though such funds were lost without any fault or negligence on his part, and based its holding upon the solid ground:

"That when the selection of the depository is taken out of his hands, and he is directed by the city to keep its funds in an institution selected by it, the city, and not the treasurer, assumes responsibility for the integrity and solvency of the institution so selected.".

In 1910, the Mississippi Legislature passed an act providing for the establishment of county and drainage district depositories, and requiring the county treasurer to deposit certain county moneys therein. Prior to the passage of this act it appears that the courts of that state had followed the rule that the county treasurers were insurers of

the safety of the funds coming into their possession by virtue of their offices. One Magee, the county treasurer of one of the counties of Mississippi, brought an action in the courts of that state wherein he contended that the statute just mentioned was unconstitutional on the grounds, first, "that it practically abolishes the office of county treasurer, which, under the Constitution, the Legislature was without power to do"; and, second, "because it makes the treasurer an absolute insurer of, and holds him absolutely liable for, the moneys of the county, when all control over same is taken out of his hands and vested in the county depository." The Supreme Court of Mississippi overruled these contentions, upheld the validity of the statute, and in disposing of the second objection made by the treasurer, stated:

"With reference to the second objection, it will be sufficient to say that the county depository law has materially changed the responsibility of the county treasurers for the safekeeping of the county funds, and they cannot now be held as insurers of the safety of the funds deposited by them under the provisions of this law."

The case is styled Magee v. Brister et al., and is reported in 109 Miss. 183, 68 South. 77.

The case of Hamilton County v. Aurora National Bank, 88 Neb. 280, 129 N. W. 267, is a Nebraska case involving the county depository law. The Supreme Court of that state, in construing that act, declared the purpose of the law to be:

"To provide a place for the safekeeping of public money, to obtain interest thereon where it was possible to do so, and to relieve state and county treasurers from liability as insurers of so much of the public money as should be placed in depository banks."

Section 1540 of our depository act, Rev. Laws of Oklahoma, 1910, expressly provides that the bondsmen of the treasurer shall not be liable for the deposit in such depository banks, and for the reason that the treasurer was not exempted specifically by said act the Commissioner was of the opinion that he should be held liable, because the rule of strict accountability had been adopted in Oklahoma prior to the passage of the depository act. It is our opinion that the omission to name the treasurer is immaterial and was doubtless an oversight by the Legislature.

From the foregoing authorities it appears that in states where the rule of strict accountability had been applied, as in this state prior to the passage of the depository act, and where the depository law did not specifically exempt the treasurer or his bondsmen, it has been consistently and uniformly held by the courts, in construing said depository

act, that neither the treasurer nor his bondsmen are liable. We have no doubt that the purpose of the Legislature of this state in requiring the bank designated by the board of county commissioners to execute a bond was for the protection of such funds, and it would be unjust to hold the treasurer liable when he had no voice in the selection of the depository, but was required to deposit the funds in the depository named by the fiscal agents of the county. This question has also been before this court, and the original opinion filed in this cause, holding the treasurer liable, is in conflict with a previous decision of this court in the case of Hinton et al. v. State ex rel. Neal, County Attorney, 57 Okla. 777, 156 Pac. 161. In that case we held, in an opinion by Commissioner Robberts, that the treasurer and his bondsmen were not liable for funds deposited in the depository bank within the amount of the bond taken and approved by the county board, but were liable for all such funds deposited in excess of the amount of the bond given by the depository bank. It was there said:

"It is well settled by authority and on principle that, when such depositories have been designated according to law, neither the county treasurer nor his bondsmen are liable for the loss of funds deposited therein, so long as the treasurer keeps within the requirements of the law. In line with that proposition, it is evident that the defendants in this cause would not be liable for the funds deposited up to the amount of the bond, which was $8,000."

It follows that the opinion filed in this cause on December 12, 1916, should be modified in accordance with the views herein expressed, and the judgment of the trial court affirmed.

All the Justices concur, except KANE, J., absent.